Council, for the apology we proceed. Thank you, Your Honor. John Brooks on behalf of GEICO. I'd like to reserve at least two minutes for rebuttal. Just watch the clock, Council, preferably for the flow of our commitments. Your Honors, under the California Supreme Court and Court of Appeal authority that we cite in our paper, an elevated bad faith refusal to settle in California is a conscious decision on the insurance company's part to forego a reasonable settlement opportunity. The California Supreme Court recognized in Wilson and the Courts of Appeal have recognized in other cases that bad faith can't be predicated on mere negligence, an honest mistake, or bad judgment. It's therefore our position that the District Court erred in not granting summary judgment for GEICO because there is no evidence in the record that GEICO consciously decided to let a settlement opportunity elapse. At most, it was guilty of negligence with respect to understanding whether or not the settlement deadline was running. Council, is there anything in the record to the contrary? I probably agree with your analysis of California law, but when you look at the facts, it does seem like a series of negligence and non-communications. Right hand on what the left hand was doing. Okay, your opponents point to anything in the record that suggests scienter, bad faith, willful neglect of any kind? I think not, Your Honor, and in fact, the corroborating contemporaneous documents, in fact, shows the opposite. For example, the claim note entry by Adjuster Buenaventura on September 4th when he noted that the settlement discovery responses still had not been received. This contemporaneously documents his scienter, his state of mind that the clock was not yet running. Further, the conversation Mr. Buenaventura had with Attorney Nichols several days later in which he expressed the idea that he had not yet received the discovery responses, Mr. Nichols did not correct that misunderstanding, and that fact is undisputed. Counsel Judge Gould, if I can ask you a couple of questions. How important is it in assessing the bad faith issue to understand what was the probability of liability of your insurance? It is an important threshold issue, Your Honor, although it doesn't end up being dispositive in this case. Okay, so that's important, and how important is it to understand the extent of excess exposure of your insurance to a damaged claim that exceeds policy limits? It's also an important threshold issue, although not dispositive here for reasons that I can explain. One thing that's significant to recognize in assessing the totality of circumstances in this case is that the underlying accident involved multiple alleged tort feasors. There are five different tort feasors who were involved in the accident. Mr. Maritani was the one who initially, due to his diabetic episode, lost control of his car, but then several additional vehicles plowed into the scene, and they were all sued as potentially responsible parties. So there were lots of policy limits available for potential settlement, and there was an uncertain allocation of responsibility among the different tort feasors. In the context of a case like that, it was acknowledged early in the claim handling that it was important for GEICO to get a better sense of where the respective responsibility lay among the various tort feasors so it can assess its own insurance responsibility, and also to, because there was so much insurance available, not just GEICO's $100,000 but many other carriers, important to assess things like the actual damage sustained by the estate. What was the life expectancy, for example, of Mr. McDaniel, which was one of the reasons why the discovery responses were important for GEICO to receive, because there was no evidence on his state of health at the time. That information was not provided by the earlier discovery responses served in connection with Mr. Asuncion. Counsel, what about the cases that were relied upon by the district judge, Hamilton, Egan, Johansson, Chrissie? The, all of the cases relied upon by the district judge, all set aside Egan because it wasn't a third-party liability case, but Johansson, Hamilton, and Chrissie, all involved conscious refusals to settle by the insurance company. There was a demand, and the insurance company, for one reason or another, said no, we won't accept that. Those are cases that implicate the underlying purpose of the tort, which is to discourage insurance companies from taking a calculated piano with their policyholders' welfare by rejecting a reasonable demand in the hope of maybe saving a few bucks. Those facts simply aren't implicated. Counsel, Judge Gould, if I can interject, then is it your position that if a settlement on its offer, a demand on its face, has a deadline for a response, that the insured can just ignore, ignore that and plead ignorance and say it's just negligence? No, Your Honor, that's not our position. Our position is if an insurance company understands that there's a settlement deadline, and it nevertheless chooses to ignore the offer and allow it to expire, that's one set of facts, which is consistent with the rationale of the tort, that there has to be a conscious and deliberate act to forego a settlement. So what if they don't subjectively understand that, but it's plain on the face of the demand letter, so that objectively a reasonable person receiving the demand letter should know that's the deadline? In a situation like that, Your Honor, I would suggest the totality of circumstances standard, which has been articulated by the various courts, and the requirement of a conscious decision would come into play if there is a good faith argument that this was in fact subterfuge or a bruise on the part of the insurance company to avoid settlement and to play dumb. That would be a set of facts on which an insurance company might be held liable, but on the facts that we have here, that's not what we have. We have a clear undisputed record of a legitimate mistake, and perhaps even the settlement deadline wasn't running, which is an alternative argument, but even assuming it was, which was a legitimate mistake corroborated by also supported by undisputed evidence that the insurance company interlockingly began the internal process of getting the settlement approvals, even though believed the demand wasn't running, and in fact extending an offer to settle a mere three and a half weeks after the deadline arguably expired, those are facts that just aren't consistent with the notion of a company taking a calculated gamble with its insurer's interest in an effort to save us. Counsel, let me ask you, once the deadline had expired and the third party said, we're going to trial, what difference does the record show that GEICO made to try to say, well, can we make a mistake here? We made you a full policy offer. Let's just do this. What effort was made there? What the record shows is that on October 2nd, the day after Adjuster Buenaventura had spoken to Mr. Nichols, and he had said, sorry, you're too late. We're off to the races. He sent a letter corroborating that that was the position that was being taken. After that point, Mr. Nichols was unwilling to engage in settlement. That's what his response to Buenaventura was. Is there a requirement in insurance law for basically good things on both sides? Yes, your honor. In the California Supreme Court case called Kransko, which is in the papers, there's a discussion about the blind covenant being a two-way street. So in this case, is it fair to say, at least arguably, that when the state that was set by the plaintiffs passed, the fact that they were unwilling to engage in any further discussions when you said, hey, like, this is a mistake. We intended to pay this whole thing. It's the whole policy limit. When they said, like, we're going for broke. You know, we think you're a big insurance company. We're going for the big bucks. What do we have to do with that? There's two ways that can be dealt with. One is under the doctrine of approximate cause. We've cited cases in the have decided the approximate cause of the failure to settle was, in fact, the unwillingness of the claimant's counsel to engage in settlement or to accept a slightly late offer for no good reason other than the desire to have a bad faith case. The other way to analyze it is under the several cases that say that the claimant's settlement deadline does not set the outer limit of a timely And even Christie, in fact, all support the idea that a settlement offer which is made sometime after the expiration of a unilateral demand can nevertheless be found to be reasonable and in good faith and sufficient to avoid any liability for a subsequent excess judgment. On this case, Gettico said, we're giving you full policy limits. No problem. More said. That was pressed once or more than once or they just said, we're going to trial no matter what we're done. On the record here, the facts are that the $100,000 was offered once. Once Geico had confirmation that the recently discovered error, Melissa McDaniel, was going to be included, which is an important consideration because that wasn't, she wasn't, her existence wasn't known at the time that the demand was originally made. And it's important for Geico to make sure it gets a release of all possible claimants under the Crane and the Leetoo cases. So that money was extended and the response from Mr. Nichols was, we're off the races. I'm not going to talk to you. Did the district judge have any kind of a last settlement conference before trial and say, well, what do we got here, an insurance policy limit? Did anything like that happen? If it did, there's no evidence of it in the record, Your Honor. I'll see you down to about three and a half minutes. You may reserve if you wish or not talk. Yes, Your Honor, I would like to reserve the remainder of my time for a moment. You may do so, please. Thank you. We'll hear from the appellate. Good morning, Your Honor. Cindy Saxe, first respondent, McDaniel. As with their written brief, appellants here attempt to mistake California law, misconstrue the facts of the case, and otherwise confuse the issues presented to this court. This is not a case of bad faith. Rather, it's a case of a breach of their duty of good faith under the covenant of good faith and fair bailing. Okay, we get that. But the cases that were cited in the California Supreme Court, as I read them, say that a duty of implied, rather an implied duty to settle, involves situations where there's an unintentional, or rather, there is an intentional failure to accept a settlement offer. Do you agree with that? I don't agree with that. In fact, Your Honor, California courts, including in Chrissy, Allen, Lincoln, have all said that liability is imposed not for bad faith breach of the contract, but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair bailing. In Martin, another California appellate case, they found that an insurer could not be relieved from bad faith liability by a belated and ineffective tender, which renders no protection to an insurer. Well, but forgive me. Maybe we're reading different cases. What I see is the cases that you've cited involve a situation where there was an intentional decision made by the part of the insurance company not to pay, not to pay a settlement offer that was demanded. In this case, if I understand the facts correctly, that's not what happened. What happened was you had the right hand not knowing what the left hand was doing, and they discovered belatedly that that had happened, and then they made the offer, and you said not to do it, we're going to trial. That's a different case, is it Well, Your Honor, there's no evidence in this case that suggests prior to the deadline of plaintiff's offer that they intended to settle. In fact, there's nothing until three weeks after the fact that there was any indication that there was a willingness to settle. Therefore, based on the fact that they'd failed to settle, and it appears to be an intentional failure to settle, they never responded. You're referring to the fact that they didn't with intention. In other words, you're not citing to any express evidence that made the determination. You're saying that the fact that they didn't settle satisfies California law. Is that your position? Yes. The fact that they did not respond to the settlement offer within the timeline permitted by plaintiffs, that they failed to engage in good faith settlement of the case. I don't think any California cases require willful intent or malicious conduct on the part of the insurer. I read them all requiring that. I don't understand your position at all. I don't get that. Show me one California Supreme Court case that says, in a case where there's no evidence, that they intentionally stiffed you, that this implied duty to settle applies. What's the case? I believe Martin- What are the facts of Martin that you rely upon? The facts of the case of Martin are that they failed to accept a $10,000 policy limit, and they didn't offer it until seven days later. And the court found that the intention of coming back after the offer had lapsed didn't allow them or didn't give them relief from bad faith liability. Weren't there more facts involved in that, though? Wasn't there some evidence that they never intended to settle? They had offered $9,000 at some point. So basically, there was a negotiation there. They didn't meet this in this case. You simply had, you know, one part said, well, we're moving along on this. It's a big company. Another part didn't communicate properly. And then when they realized what had happened, they said, hey, sorry, here's the money. And you said, no, wrong trial. It's a different case than Martin. Isn't it? The facts are a little bit different, but I think the overall- A little bit different, but critical. Well, I think the holding in Martin, though, states that an insurer cannot be relieved of its liability for bad faith if it fails to reasonably accept- Well, where's the bad faith here? Your Honor, we're not talking about bad faith here. You said bad faith. You can't be relieved from bad faith. I'm saying, where is the bad faith here? Then I apologize. I misstated. You can't be relieved of breaching your duty of good faith in fair dealing by coming to the plaintiff's after their offer has lapsed and offering to then settle for a full policy- So you're saying that California law is that you can breach an applied duty of good faith, in this case, an applied duty to settle without any sciatur based on negligence alone. Is that your position? That is our position, Your Honor. And I think if you look to the case of Chateau-Chambray, citing Dalrymple, in fact, they state that- Wait a minute. I didn't get the name of that case. What is it? Dalrymple. Dalrymple v. United States Auto Association, a 1995 case at 40 Cal. App. 4497. In that case, the court held that an insurer's delay or denial in the payment of policy benefits gives rise to tort damages only if the insurer acted unreasonably or without proper cause. In that case, they also stated that the courts have never found that a delay or denial is reasonable, or they've only found that it is reasonable, where there is an existence of a genuine dispute as to the existence of coverage liability or the amount of the insurer's coverage. Counseling, excuse me, but I can't find that case. Was that cited in your brief? Yes. Well, then the- I apologize. Chateau-Chambray is cited in our case. If I understood you correctly, you told me that you were referring us to Dalrymple. I was saying that the Chateau-Chambray case was citing this additional case. Which is the case that you want us to look at? Chateau-Chambray. Chateau-Chambray. All right. I've got that case now. Thank you very much. Yes, Your Honor. Not Dalrymple? No. I was just saying that that was the one that was cited, and I understood you to be asking about that, the citation for that case. In that case, the court found that it was only reasonable to have a delay or denial to a plaintiff's settlement offer, which is the same situation as in this case, intent or not, to settle the case, where there is the existence of a genuine dispute of either the coverage of the claim or liability. Here, four months before a plaintiff's offer was ever even made, there was clear liability and clear coverage of the claim. Was there ever any assertion by the company that they did not intend to pay? Only the fact that they never responded to any of the plaintiff's requests to settle the case. Through the first letter, through the discussions between Mr. Gray and Mr. Nichols at the deposition, the second letter, there was no mention ever that they had intended to settle. But not either the opposite, either they didn't say or not pay? I think it can be implied if they're never saying when we're looking to settle that they're not looking to settle, and certainly without responding or asking any questions to clarify the settlement offer, they weren't looking to settle. But what it really gets down to, when you dance all around the thing, the reality is that your position is that mere negligence is enough to establish a breach of the implied duty to settle under California insurance law. Is that correct? I think it's not just mere negligence, but as... But more is required. Well, I think, I mean, as certain California cases have found, the evasion of the spirit of the bargain, lack of diligence, or slacking off... Okay, the evasion of the spirit of the bargain, that's like your fair share of taxes, isn't it? It's all in the eye of the beholder. Well, certainly, but in an insurance case, an insurer is paid, they enter into a contract, they receive premiums, and their part of the bargain is to pay up, pay up on the policy limits when there's an accident that is covered. Okay, I understand the record. They have never said that they wouldn't pay, never said that. So you're taking the fact that they didn't pay as a refusal to pay, but not only a refusal to pay, but a bad thing refusal to pay and a breach of the implied covenant of the duty to settle. Is that right? Yes, but I don't, I think that there's a distinction between bad faith and the breach of the duty of the good faith and fair dealing. Okay, so it doesn't take bad faith to do that. So I want to get back to what I asked in the first place, which is, is it your position that under California insurance law that all that is required to breach the implied duty to settle is negligence, mere negligence? I think you have to look at the totality of the circumstance, but yes, I think negligence is enough. You do that, and all you find is negligence. Is that enough? I think, Your Honor, I think that is enough. I think based on the totality. Okay, so I'll get back to Martin again. I think Martin, I think Betts, Lincoln, the case of Oaks, and also the case of Allen, all of which I've cited. If we conclude that California law requires more than mere negligence to breach an implied duty to settle, then you lose, don't you? Well, I think that based on a totality of circumstances, you can show that there is more than just mere negligence. What is that evidence? I think the fact that they had all of the information four months before the offer was ever even made is a clear indication that they had everything they needed and that they knew that the offer was, by the time the offer was outstanding, they knew the offer began to run, they engaged in negotiation, and still let the offer lapse. I think letting it offer lapse, knowing that there is a deadline out there, which is very clear through Groit's written memorandum. Do you believe that letting it lapse is bad faith? I believe it is bad faith. Okay, so even if, let's say somebody's mother died, and they were going to deliver the letter, as far as you're concerned, did it deliver it too bad? They're out against bad faith, right? Well, certainly. I think it goes to the, I think had, I think had Geico here come to plaintiffs on September 11th and said, you know what, we intend to settle. And that's their mistake. Their mistake was writing down that it was due September 11th, not September 6th. I think we may be in a different position here. I think maybe we need to talk. Now we're getting to the point before you were absolute that they missed the date, they're getting into specific facts about what was really happening. The record seems to show that you had different parties that missed the pay or communicate, basically. But a failure to. Nobody said, we're not going to pay. They were just working it along. They didn't give back. They made a mistake. But a failure to communicate, Your Honor, is a failure to do their due diligence, and a failure to meet their duty under the fair covenant of good faith and fair dealing. And you said that's either bad faith or that mere negligence is enough to trigger the duty to, the implied duty to settle. Is that right? I think that, I do believe that negligence can be enough to trigger that. And Martin's your authority. I think Martin, as I've said, Lincoln. I think even the recent Grayson case and Grace DeAnna both also go towards that. I think, I think if you also look to the Karma Developers case, which is a California Supreme Court case, that goes to it. I think that the Wilson case as well states that a genuine dispute only exists where the insurer's position is maintained in good faith. And on reasonable grounds. And I think it's unreasonable here that the insurer did not respond in any way until nearly a month after plaintiff's settlement offer. Counsel, with respect, the whole concept of bad faith is just as its name implies. If you have bad actors, people who, insurance companies, big companies have a lot of money. They're supposed to pay the policies. And if they just game it, that's what the law is intended to punish. And appropriately so. I am searching, I'm afraid thus far, in vain to find that bad faith that you refer to. I see some negligence. I see some miscommunications. I'm not seeing bad faith. And you're telling me that the mere negligence is enough. To me, that is a quantum leap from how I read California law. And what Martin doesn't make it for me. What designs of Martin can you refer me to? Well, as I've already stated, there's the Betts case, the Chateau Chamberlain case, the Lincoln case. And all of those demonstrate. Counsel, you just mentioned the Grayson case. Yes. Grayson held for all state. Correct, Your Honor. But I think what the Grayson court states is that an insurer's unwarranted refusal to do, to settle the case constitutes a breach of the implied covenant of good faith and fair dealing. There's nothing that warrants Geico's failure to respond to plaintiff's offer. What do you do with this sentence? All state did not refuse to settle, much less unreasonably or unwarrantedly refuse. In fact, all state attempted repeatedly to settle the case. Well, Your Honor, in that case, all state came forward on the day that the offer was due to last. They actually got their offer in prior to the deadline. None of the cases in California have ever dealt with an offer coming in three weeks later. In fact, Grayson, Graciano, all of these cases that discuss this issue are cases where the plaintiff or the insurer has come forward within the deadline, reasonably come forward within the deadline and just offered a release or offered a broader release than the plaintiff wants. And so I certainly don't think that those support plaintiff's case in this instance. Thank you, Counsel. Your time has expired. Mr. Brooks, I believe you have some reserved time. Thank you, Your Honors. Just a few brief points. With respect to the Chateau Chambray case, I would like to point out that that case is the source of the language adopted by the California Supreme Court in the Wilson case. The bad faith can't be predicated on your negligence, honest mistake, etc. With regard to the genuine dispute line of cases that was referred to by counsel, genuine dispute cases involve conscious refusals by the insurance company to do something, to pay a claim. And the genuine dispute document is raised as a defense to that. It says, yes, we refuse to pay your claim, consciously, but we had a good reason to. Those line of cases have nothing to do with what we're dealing with here, which is mere negligence at most and lack of any conscious decision. With regard to the Martin case, there was a misstatement of some of the facts in that case. The Martin case was decided on a drurr record. The insurance company's argument was, even though we consciously rejected the demand, we offered the limits nine days later, therefore, we're off the hook as a matter of law. What the court ruled is, no, you're not off the hook as a matter of law, but you're not necessarily on the hook as a matter of law. That's going to be an issue for a jury to decide whether a late acceptance, insufficiently timely, can constitute, can demonstrate good faith. That's part of our alternative argument, that there's at least a tribal issue on that, but because we have no conscious rejection, we shouldn't even have to get there. Last, I wanted to respond to the notion that GEICO had all the evidence that it needed to evaluate the case four months prior to the settlement demand. That's not an accurate characterization of the record. There was no information about Mr. McDaniel's state of health, and thus, earnings capacity, et cetera, until August 27th, when the discovery responses were served. The earlier discovery responses in connection with Mr. Asuncion, McDaniel had asserted privilege with respect to all those health questions. There was uncertainty about the identity of all the heirs, until the discovery responses were received. And in fact, at the same time that the August 27th discovery responses were received, the complaint was amended to add Melissa McDaniel as a plaintiff in the case, which was another thing that wasn't known. A third thing that wasn't understood was the full set of facts surrounding Mr. Muratani's conduct until his deposition on August 27th. There were reasons to suspect his negligence earlier, because he did have some experience with diabetic episodes, but it was only in his deposition on August 27th that it became known that he had continued driving his car for miles after realizing he was having an episode, that he had sugar pills in his car that he could have taken, and that he chose not to take. So the liability case against Mr. Muratani, and the idea that he might be assigned a larger portion of the cumulative blame for the injuries, increased significantly on August 27th. That information was relayed by letter to Mr. Pointaventura on September 1, and nine days later, September 10th, he begins the process of getting the authority to settle the case. That's the company trying to get the case settled. Thank you.
judges: O'scannlain, Gould, M. Smith